**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

|  |  |  |
|---|---|---|
| SINEAD NORENIUS<br>930 40th Ave N.<br>Saint Petersburg, FL 33703<br><br>　　　Plaintiff,<br><br>　　　　v.<br><br>CISION US INC. d/b/a<br>　　　CISION LTD<br>300 S. Riverside Plaza, Suite 300<br>Chicago, IL 60606<br><br>Serve:　The Corporation Trust Inc.<br>　　　　2405 York Road<br>　　　　Suite 201<br>　　　　Lutherville-Timonium, MD 21093<br><br>　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. _____ |

## COMPLAINT

Plaintiff SINEAD NORENIUS, by counsel, hereby moves this Court for entry of judgment in her favor, and against Defendant CISION LTD, and in support thereof states as follows:

## NATURE OF ACTION

1.　This Complaint alleges discrimination on the basis of gender and age; breach of contract; fraud and deceit; constructive fraud; and negligent misrepresentation.

## PARTIES

2.      Plaintiff Sinead Norenius ("Ms. Norenius") is a resident and citizen of the State of Florida.  At all times relevant hereto, Ms. Norenius was employed by Defendant Cision LTD, and worked from various locations throughout the United States.

3.      Defendant Cision LTD ("Cision") is an Illinois corporation and maintains offices worldwide and throughout the United States, including in the State of Maryland, where it is registered to do business.

## JURISDICTION AND VENUE

4.      The amount in controversy in this action exceeds the jurisdictional minimum amount for this Court.

5.      Cision is present in, and regularly conducts affairs and business activities in Maryland, including at 12051 Indian Creek Ct., Beltsville, Maryland.

6.      The terms of Ms. Norenius' employment with Cision were outlined in an Offer Letter and Employment Agreement.  The Agreement specified that any proceeding "arising out of this Agreement will be brought in Maryland State Court or a federal court of competent jurisdiction located in Maryland[.]"

7.      Therefore, Cision is subject to the personal jurisdiction of this Court.

8.      Venue is also proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391(b)(1), and due to the parties explicitly agreeing to this Court as the venue for any proceeding arising out of their Agreement.

## PROCEDURAL STATUS

9.      Ms. Norenius timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on April 12, 2024.

2

10.    On October 10, 2024, the EEOC issued a Notice of Right to Sue to Ms. Norenius.

11.    This action is timely filed and all procedural and administrative prerequisites to suit have been met.

## BACKGROUND

### A. Cision recruits Ms. Norenius in 2021, and her performance is exemplary.

12.    Ms. Norenius is a 48-year-old female with decades of experience in product management, marketing, media, and operations.

13.    Ms. Norenius was a highly sought out executive.

14.    In June 2021, Ms. Norenius was recruited to Cision by Jay Webster ("Mr. Webster"), Chief Product Officer, to lead the Media Relationship Management ("MRM") teams.

15.    In reliance on the incentive package presented by Cision, Ms. Norenius left her previous employer and joined Cision.  Ms. Norenius' written offer included the following terms:

   i.    A base salary of $270,000 per year;

   ii.    A Management Incentive Plan ("MIP"), which was an annual bonus with a target of 30% of Ms. Norenius' base salary, i.e. $81,000, with an opportunity to attain up to 200% of her target; and

   iii.    A provision stating "you **will** participate in the Company's long term incentive plan (LTIP).  This plan is cash-based and based on the three-year performance of the Company and you meeting your objectives through the end of 2024.  Your target incentive is $100,000 per year with a total target incentive of $300,000.  This bonus will be paid as soon as practicable after Q1, 2025, based on actual results." (emphasis added).

(collectively, the "Offer Letter").

16.     Cision drafted the Offer Letter.

17.     The Offer Letter was solidified and presented to Ms. Norenius by both Mr. Webster and then-Chief Human Resources Officer Paul Dumas ("Mr. Dumas"). Ms. Norenius executed the Offer Letter on July 6, 2021. A true, accurate copy of the executed Offer Letter is attached as **Exhibit A**.

18.     The Offer Letter stipulated that the employment offer was "contingent upon [Ms. Norenius'] execution of the Company's Confidentiality Agreement, and as a condition of your employment, you agree to abide by the terms of that Agreement."

19.     Ms. Norenius was subsequently provided with the additional agreement, a Confidentiality, Intellectual Property, Non-Solicitation and Non-Competition Agreement (the "Agreement"). A true, accurate copy of the executed Agreement is attached as **Exhibit B**.

20.     The preamble to the Agreement stated that "Employee is expressly being given employment with the Company, certain monies, benefits . . . in exchange for Employee agreeing to the terms of the Agreement." Id.

21.     Paragraph 10 of the Agreement specified:

> This Agreement shall be construed, interpreted, and enforced, and its validity and enforceability determined, strictly in accordance with the laws of the state of MARYLAND without applying its conflicts of laws principles.
>
> Id.

22.     Paragraph 11 of the Agreement further specified:

> Any and all lawsuits, legal actions or proceedings against either party arising out of this Agreement will be brought in Maryland State Court or a federal court of competent jurisdiction located in Maryland, and each party shall submit to and accept the exclusive jurisdiction of such court for the purpose of such suit, legal action or proceeding.
>
> Id.

23.     Ms. Norenius executed the Agreement on July 15, 2021, and began working for Cision as Vice President of Product Management on July 26, 2021.

24.     Throughout her tenure at Cision, Ms. Norenius excelled and achieved all that was asked of her, notwithstanding the massive turnover in senior leadership and the continued change in direction of the company, along with the complexity of the technology landscape and legacy platforms still in operation.

25.     Under Mr. Webster's leadership, Ms. Norenius and other female executives were empowered and valued, and succeeded as a result.

26.     In Ms. Norenius' 2021 annual review by Mr. Webster, she received a "Fully Achieves Expectations" rating.  Based on this review, Ms. Norenius received a salary increase to $278,505 per year, and an MIP payout of $42,341.  (The MIP payment was for only six (6) months, as Ms. Norenius started in July.)

27.     On or about September 2022, Mr. Webster was promoted to President of Cision Comms Cloud and Chief Product & Technology Officer.  Mr. Webster then promoted Bao Chau Nguyen ("Ms. Nguyen") to SVP of Product, at which time Ms. Norenius began to report to Ms. Nguyen.

28.     In Ms. Norenius' 2022 annual review by Ms. Nguyen, she received an "Exceeds Expectations" rating – a higher rating than 2021.  Accordingly, she received a salary increase to $300,000 per year, and an MIP payment of $40,204.98.

29.     The $40,204.98 MIP payment was notable, because Cision had not hit its own revenue targets and others received even smaller (or no) MIP payments.  But Ms. Norenius was so highly valued that Cision ensured she received her full MIP payment.

30.     By 2023, Ms. Norenius had the largest team in the Product Department in Cision, the Media Operations team, consisting of 57 full time employees and 78 contractors.  In addition to the Media Operations team, Ms. Norenius also managed two distinct product platforms, BuzzSumo and Connectively.

31.     Other company Vice Presidents at the time had less than 15 people in their remits.

**B. Cision wrongfully terminates Ms. Norenius; offers only two weeks' severance; and refuses to pay her the money she is owed pursuant to the MIP and LTIP.**

32.     On or about late summer 2023 the Cision Senior Leadership Team ("SLT"), of which Ms. Norenius was a member, were told that Michael Amsinck ("Mr. Amsinck"), Chief Product Officer ("CPO") of Brandwatch, would be taking over as CPO of Cision LTD based out of Copenhagen, Denmark.

33.     Mr. Amsinck had a poor track record of working with females on SLTs.  In fact, Mr. Amsinck's leadership structure had only one female leader in his organization, Gemma Cooper ("Ms. Cooper"), Vice President of R&D Operations.  The other seven members of his SLT were male.

34.     Meanwhile, Cision had purchased a company called Streem in 2022, and Streem's leadership team was becoming more integrated with Cision.

35.     On or about August or September 2023 – at the same time the changes referenced in Paragraph 32 were occurring – it was announced that Elgar Welch ("Mr. Welch"), a male and the former CEO of Streem, was to become president of CisionOne, one of Cision's new platforms.  Like Mr. Amsinck, Mr. Welch had a poor track record of working with females.

36.     Simultaneously, it was also announced that Mr. Webster and Mr. Dumas would no longer be working with Cision.

37.     In September 2023, Ms. Norenius worked with Ms. Nguyen to promote Alison Czaplicki ("Ms. Czaplicki") on the Connectively team from Product Owner to Product Manager with a significant increase in salary.  The promotion was approved on September 28, 2023, and Mr. Amsinck was copied on all communications regarding the promotion.  However, despite Ms. Norenius requesting a response from Mr. Amsinck multiple times, Mr. Amsinck did not respond to Ms. Norenius and did not act on Ms. Czaplicki's promotion.  As a result, Ms. Czaplicki was not promoted until December – after Ms. Norenius' and Ms. Nguyen's termination.

38.     Also in September 2023, Ms. Norenius requested meetings with Mr. Amsinck multiple times, regarding both the platforms and the teams she was managing.  Mr. Amsinck was not responsive, appeared disinterested, and declined to meet with Ms. Norenius.  This was in sharp contrast to how Mr. Amsinck treated male employees, including similarly situated male employees.

39.     Unbeknownst to Ms. Norenius, throughout Fall 2023 Mr. Amsinck was engaged in meetings with Mr. Welch and other Senior Leadership Team members wherein they conspired to wrongfully and unlawfully terminate Ms. Norenius, and refuse to pay her the MIP and LTIP payments that were duly owed.

40.     In late October 2023, Ms. Norenius was informed by Ms. Nguyen and Jeff Hicks ("Mr. Hicks"), the SVP of Engineering who also reported to Mr. Amsinck, that the BuzzSumo team, which had been under her leadership, would be moving to Mr. Welch's organization.  Ms. Norenius asked why, and was told that BuzzSumo would soon be shut down.

41.     However, this was false.  BuzzSumo was not shut down and is still active to date.

42.     Ms. Norenius was further informed that the Media Operations team, which was also under her leadership, would likewise be moving to Mr. Welch's organization.

43.     On November 21, 2023 – two days before Thanksgiving – Ms. Norenius was informed by Crystal Carlson ("Ms. Carlson"), Senior Director of Global People/Human Resources, that she was being laid off pursuant to a Reduction in Force ("RIF") and restructuring.

44.     Ms. Norenius was shocked, and immediately sought answers regarding this turn of events.  Ms. Carlson repeatedly was unable to provide Ms. Norenius with legitimate bases for the RIF and her termination.

45.     For example, though Ms. Norenius was told that "restructuring" was the reason for her termination, no one could explain the details of the "restructure."

46.     During this same meeting, Ms. Norenius was offered only two weeks of severance with a year-long non-compete and three months of Cobra coverage.  Two weeks' severance is not the industry standard for Ms. Norenius' position – Vice President with 2.5 years of employment, nor has Cision offered such a low amount to similarly situated males.

47.     Ms. Norenius was not paid any of the monies owed to her pursuant to the terms of the MIP and LTIP and as promised.

48.     When Ms. Norenius specifically asked Ms. Carlson about her MIP bonus and LTIP payment, Ms. Carlson's only response was she would "follow up."  Ms. Carlson never followed up.

49.     The following day, November 22, 2023, Ms. Nguyen, SVP of Product, was laid off.

50.     To be clear, these were not legitimate layoffs.  Out of 300-400 employees in product and engineering, only Ms. Norenius and Ms. Nguyen were terminated.  No other

employees – including no males – were laid off or terminated, including many less qualified males and with less tenure.

51.     Cision subsequently refused to acknowledge Ms. Norenius' LTIP, falsely claiming Ms. Norenius did not have an actual LTIP document, and falsely claiming Ms. Norenius did not have a signed agreement.

52.     Indeed, the Offer Letter clearly stated that an LTIP was included, along with the total value ($300,000).  See **Exhibit A**.

53.     Nowhere did the Offer Letter state that Ms. Norenius would receive additional LTIP documentation, and/or that Ms. Norenius' LTIP would somehow be void if she did not receive and sign additional documentation.  Id.

54.     Additionally, upon information and belief, other Cision employees will receive LTIP payments – or have already been paid out – when certain LTIP conditions precedent are met.  However, Cision has wrongfully refused to provide any documentation regarding when and if said conditions have been met.

55.     Moreover, upon information and belief, at least two similarly situated male VPs of Product who had been in their positions less time than Ms. Norenius, and had smaller teams than Ms. Norenius, received 50% more severance than what Ms. Norenius was offered.

**C. Cision replaced Ms. Norenius with a substantially younger, less experienced male journalist.**

56.     After her termination, Ms. Norenius learned that the Media Operations team, which used to report to her, had in fact been moved to Mr. Welch.

57.     Ms. Norenius also subsequently learned that a new position, Associate Vice President, Global Media Data, had been created with the same or very similar job responsibilities as Ms. Norenius' prior position with Cision, including managing her entire Media Operations

team.  Ms. Norenius had not been made aware that this position was available during her purported "lay off," nor were other qualified internal female candidates made aware, including Cheryl Douglas ("Ms. Douglas"), a female in her 50s who was Ms. Norenius' Senior Director of Media Operations.

58.   The position of Associate Vice President, Global Media Data, was apparently awarded to a substantially less experienced, substantially younger, male, Conal Hanna ("Mr. Hanna"), who had previously been working as a journalist in Australia.

59.   Cision did not disclose Mr. Hanna's hiring.  Instead, Ms. Douglas found out she and other members of Ms. Norenius' team were now reporting to Mr. Hanna via LinkedIn.

60.   To further add to the pretext for Ms. Norenius' termination, the majority of Ms. Norenius' Media Operations team is located in the United States and Europe.  Yet Mr. Hanna resides in Australia.

61.   Ms. Norenius' termination is part of Cision's system pattern and practice of discriminating against older women, and Ms. Norenius is not the only female who has been subject to Cision's egregious conduct.

62.   By way of example, Ms. Douglas complained to Cision about the appointment of Mr. Hanna, as she was not notified of the position; would have applied if she had been made aware; and had complained that Mr. Hanna's hiring and Cision's business practices were illegal and discriminatory.

63.   Cision terminated Ms. Douglas on June 24, 2024.

64.   Throughout her time at Cision, Ms. Norenius excelled at, and delivered on, everything that was asked of her while also going above and beyond as an employee.

65. Cision discriminated against Ms. Norenius by terminating her for no legitimate business purpose whatsoever; retaining similarly situated males; and replacing Ms. Norenius with a less qualified, substantially younger, male. Cision also offered Ms. Norenius less severance that her male counterparts.

66. Additionally, Cision purposely induced Ms. Norenius to accept the Offer Letter and Agreement; used and exploited her valuable skills, connections, and services; lied about any rationale for a purported "lay off;" and is now trying to get out of paying Ms. Norenius the sums she is owed, even though Cision paid out similarly situated males.

67. As a result of Cision's actions, Ms. Norenius has suffered in lost employment, wages, MIP and LTIP payments, and attorneys' fees. Ms. Norenius has also experienced tremendous emotional distress, inconvenience, and frustration.

**COUNT ONE**
**DISCRIMINATION IN VIOLATION OF TITLE VII**

68. The foregoing allegations are incorporated as if realleged herein.

69. Cision discriminated against Ms. Norenius on the basis of her gender, female.

70. This discrimination included: removing Ms. Norenius' two product teams, the Media Operations team and the BuzzSumo team, from her management and placing their control under a male (Mr. Welch); lying to Ms. Norenius that BuzzSumo was going to be shut down, when in fact it was moved under a male (Mr. Welch); inexplicably refusing to sign off on the promotion of Ms. Norenius' female employee (Ms. Czaplicki); terminating Ms. Norenius for no legitimate business purpose whatsoever and falsely calling it a lay-off; replacing Ms. Norenius with a substantially less qualified, substantially younger male; refusing to pay Ms. Norenius as required by the MIP and LTIP, while simultaneously paying (or promising to pay) similarly

situated males; and offering Ms. Norenius substantially less severance than that offered to similarly situated males.

71.  Cision's discriminatory treatment of Ms. Norenius violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

72.  In discriminating against Ms. Norenius in violation of federal law, Cision evidenced malice, spite, and ill will; its actions were willful and wanton; and it evidenced a conscious disregard for Ms. Norenius' rights.

73.  As a direct and proximate result of Cision's discrimination, Ms. Norenius has suffered and continues to suffer significant damages including, but not limited to, loss of employment, loss of compensation, loss of good will and reputation, emotional distress, frustration, litigation expenses including attorneys' fees and other pecuniary and non-pecuniary damages.

74.  Due to the severity of Cision's conduct, and conscious disregard of Ms. Norenius' federal protected rights, Ms. Norenius is also entitled to punitive damages.

**COUNT TWO**
**DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF**
**THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

75.  The foregoing allegations are incorporated as if realleged herein.

76.  Cision discriminated against Ms. Norenius on the basis of her age, 48 years old.

77.  This discrimination included knowingly and intentionally treating Ms. Norenius differently and adversely on the basis of her age; ultimately terminating Ms. Norenius on the basis of her age; and replacing Ms. Norenius with an individual under 40 years old.  Moreover, Cision failed to consider Ms. Norenius for the position of Associate Vice President, Global

Media Data, even though Ms. Norenius and other individuals (including Ms. Douglas) age 40 or older were available and well qualified.

78.    Cision's discriminatory treatment of Ms. Norenius violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*.

79.    In discriminating against Ms. Norenius in violation of federal law, Cision evidenced malice, spite, and ill will; its actions were willful and wanton; and it evidenced a conscious disregard for Ms. Norenius' rights.

80.    As a direct and proximate result of Cision's discrimination, Ms. Norenius has suffered and continues to suffer significant damages including, but not limited to, loss of employment, loss of compensation, loss of good will and reputation, emotional distress, frustration, litigation expenses including attorneys' fees and other pecuniary and non-pecuniary damages.

81.    Due to the severity of Cision's conduct, and conscious disregard of Ms. Norenius' federal protected rights, Ms. Norenius is also entitled to punitive damages.

## COUNT THREE
## BREACH OF CONTRACT

82.    The foregoing allegations are incorporated as if realleged herein.

83.    As set forth in the Complaint, the Offer Letter and Agreement are binding, enforceable agreements between Ms. Norenius and Cision.

84.    Cision drafted the Offer Letter and Agreement, therefore any ambiguities regarding the terms thereof must be construed against Cision.

85.    Notwithstanding, the terms of both the Offer Letter and Agreement are clear. Pursuant to the terms of the Offer Letter, Cision was obligated to pay Ms. Norenius a MIP of at

13

least 30% of her annual base salary. Additionally, pursuant to the terms of the Offer Letter, Cision was obligated to pay Ms. Norenius her LTIP in the amount of $300,000.

86.     During her tenure at Cision, Ms. Norenius' performance was excellent; she received positive reviews; and she met all of her objectives through the end of 2023, prior to her termination.

87.     Cision's failure to pay Ms. Norenius the payments due and owing to her under the MIP and LTIP is a material breach of the Offer Letter and Agreement.

88.     As a direct and proximate result of Cision's breach, Ms. Norenius has suffered and continues to suffer significant damages including, but not limited to, loss of compensation, loss of MIP and LTIP payments, loss of earning capacity and opportunity, loss of good will and other pecuniary damages including interest.

## COUNT FOUR
## FRAUD/DECEIT

89.     The foregoing allegations are incorporated as if realleged herein.

90.     Cision sought and induced Ms. Norenius' employment, and drafted and proffered the Offer Letter and Agreement.

91.     The Offer Letter contained provisions for both a MIP and LTIP.

92.     Ms. Norenius accepted Cision's offer of employment.

93.     Ms. Norenius' acceptance of Cision's offer of employment was based upon Cision's representations that the Offer Letter included both a MIP and LTIP.

94.     However, at the time Cision made those representations, Cision knew those representations were false and materially misleading, and that it never intended to abide by the terms set forth in the Offer Letter.

14

95. Cision intended Ms. Norenius to rely upon its representations that it would abide by the terms of the Offer Letter.

96. Ms. Norenius justifiably replied upon Cision's representations.

97. But for the inclusion of the MIP and LTIP, Ms. Norenius would not have executed the Offer Letter and Agreement.

98. But for the inclusion of the MIP and LTIP, Ms. Norenius would not have left her prior employer.

99. Ms. Norenius has been and continues to be damaged by Cision's fraud.

100. As a direct and proximate result of Cision's fraud, Ms. Norenius has suffered and continues to suffer significant damages including, but not limited to, loss of employment, loss of compensation, loss of good will and reputation, emotional distress, frustration, litigation expenses including attorneys' fees, and other pecuniary and non-pecuniary damages.

101. Due to the severity of Cision's conduct, Ms. Norenius is also entitled to punitive damages.

102. The egregious circumstances surrounding Cision's fraudulent acts also warrant the award of attorneys' fees.

## COUNT FIVE
## CONSTRUCTIVE FRAUD/NEGLIGENT MISREPRESENTATION

103. The foregoing allegations are incorporated as if realleged herein.

104. Cision sought and induced Ms. Norenius' employment, and drafted and proffered the Offer Letter and Agreement.

105. Cision, as Ms. Norenius' employer, owed a duty of care to Ms. Norenius, Cision's employee.

106. The Offer Letter contained provisions for both a MIP and LTIP. Cision negligently represented that it would abide by the terms of the Offer Letter, specifically those pertaining to a MIP and LTIP.

107. Ms. Norenius, a Cision employee, justifiably relied upon Cision's, her employer, representation that it would abide by the terms of the Offer Letter, including the MIP and LTIP.

108. Cision knew that Ms. Norenius relied upon Cision's representation that it would abide by the terms of the Offer Letter, including the MIP and LTIP.

109. Ms. Norenius accepted Cision's offer of employment.

110. Ms. Norenius' acceptance of Cision's offer of employment was based upon Cision's representation that the Offer Letter included both a MIP and LTIP.

111. But for the inclusion of the MIP and LTIP, Ms. Norenius would not have executed the Offer Letter and Agreement.

112. But for the inclusion of the MIP and LTIP, Ms. Norenius would not have left her prior employer.

113. Cision has not abided by the terms of the Offer Letter, and failed to recognize the existence of the MIP and LTIP.

114. Ms. Norenius has been and continues to be damaged by Cision's misrepresentations.

115. As a direct and proximate result of Cision's misrepresentations, Ms. Norenius has suffered and continues to suffer significant damages including, but not limited to, loss of employment, loss of compensation, loss of good will and reputation, emotional distress, frustration, litigation expenses including attorneys' fees and other pecuniary and non-pecuniary damages.

116.    Due to the severity of Cision's conduct, Ms. Norenius is also entitled to punitive damages.

117.    The egregious circumstances surrounding Cision's fraudulent acts warrant the award of attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SINEAD NORENIUS, by counsel, requests that this Court enter judgment in her favor, and against Defendant CISION LTD, on each of the above counts, and on all counts, and further:

a)  Award Ms. Norenius compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on the above-stated Counts One through Five; and in addition

b)  Award Ms. Norenius pre- and post-judgment interest; and

c)  Award Ms. Norenius punitive and exemplary damages, to be determined by a jury, on the above-stated Counts One, Two, Four, and Five; and in addition

d)  Award Ms. Norenius attorneys' fees and costs, as permitted by law; and

e)  Award Ms. Norenius all allowable costs and expenses she incurred in connection with this litigation, including the costs of experts; and

f)  Award Ms. Norenius such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff Sinead Norenius demands a jury trial on all issues triable to a jury.

December 30, 2024                              Respectfully submitted,

_____
Elaine Charlson Bredehoft, *pro hac vice motion being submitted*
Adam S. Nadelhaft,
MD District Court Bar ID No. N1031119
Jessica L. Sartorius,
MD District Court Bar ID No. 31327
CHARLSON BREDEHOFT
COHEN BROWN & NADELHAFT, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
ebredehoft@cbcblaw.com
anadelhaft@cbcblaw.com
jsartorius@cbcblaw.com
*Counsel for Plaintiff, Sinead Norenius*

18